32 C.C.P.A.(Patents)

## FIFE v. BRIGHT et al.

### Patent Appeal No. 4932.

Court of Customs and Patent Appeals.
Dec. 11, 1944.

Almon S. Nelson, of Richmond, Va. (William B. Wharton, of Pittsburgh, Pa., of counsel), for appellant.

Arthur H. Bransky, of Chicago, Ill. (Donald E. Payne, of Chicago, Ill., of counsel), for appellees.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Interference Examiners of the Patent Office awarding priority to the party Gray in an interference proceeding, in which, as passed upon by the board, three parties were involved, Gray (application filed October 18, 1938) being the senior party; Fife (application filed October 20, 1939) the first junior party, and Bright (application filed January 5, 1940) the second junior party.

The Board held that Bright failed to establish reduction to practice prior to his filing date, or diligence during the critical period, and that Fife failed to prove conception or reduction to practice prior to his

filing date. So, Gray received the award of priority.

Bright took no appeal from the Board's decision. Therefore, he is not a party to the controversy before us, although in the style of the case, as stated in the appeal record, his name appears in the category of an appellee and all the evidence taken in his behalf was (unnecessarily as the issues are presented here) included in the record.

■ So, the controversy before us is solely between Fife and Gray, Fife, as the junior party, having the burden of establishing priority by a preponderance of the evidence.

Gray's application (filed, as stated, October 18, 1938) bears the serial number 235,-629; the application of Fife (filed October 20, 1939) bears serial No. 300,343. Fife's application recites that it "forms a continuation in part" of a prior (and copending) application, serial No. 99,640, filed September 5, 1936, which was introduced in evidence during the taking of Fife's testimony. There was also introduced in evidence an application of Fife, serial No. 36,365, filed August 15, 1935, which was discussed in the decision of the Board, and is later referred to herein.

The interference is based on a single count which reads: "A coal spray oil composition consisting substantially of a major constituent, namely a heavy solvent extract of a petroleum lubricating oil, dissolved in a minor constituent, namely a relatively less viscous solvent petroleum oil, said solvent petroleum oil being in quantity sufficient to lower the viscosity of the blend to sprayable consistency."

In describing the subject matter the Board said: "The invention involved in this interference relates to a composition for the spraying of coal in order to render it dustproof and improve its properties in other respects. The most important ingredient of the composition is the undesirable heavy fraction of a petroleum lubricating oil which is removed when such oil is subjected to extraction with a solvent. This undesirable fraction is dissolved in a relatively less viscous petroleum oil in order to produce a sprayable composition."

The brief on behalf of Fife states:

"Broadly stated the Fife (1936) application discloses a coal spray oil composition consisting of petrolatum 25% up, added extract up to 50%, added low viscosity oil (optional) 0% to 50%. Blends falling with-in this range he sprays at a temperature of approximately 80°C. to 90°C.

"Broadly stated Gray's application discloses a coal spray oil composition consisting of extract 15% to 100%, less viscous oil (preferably wax distillate) 0% to 85%, pour depressor (optional) 10% to 25%. For those exemplifications of his composition which contain much wax distillate and those which fall within the higher viscosity ranges Gray prescribes relatively high temperature spraying.

"The count does not include, nor did Gray press for, a coal spray oil consisting of extracts alone, that is a coal spray oil containing 0% of added low viscosity oil."

The interference was originally declared upon a count differing somewhat from the instant count. It contained among its limitations one specifying "at least 25% of a heavy solvent extract of a petroleum."

During the motion period Gray (and Bright also) moved to dissolve the interference so declared as to Fife on various grounds and Fife moved to shift the burden of proof, in effect claiming constructive reduction to practice based on his application, serial No. 99,640, filed September 5, 1936.

Gray also moved, under Patent Office rule 109, to amend the interference by adding the count which is here involved.

The examiner sustained the motions to dissolve upon the sole ground that Fife failed to disclose an adequate basis for the "at least 25%" limitation above alluded to, this holding being applicable to both the parent application, serial No. 99,640, and the application directly involved, serial No. 300,343. The motions were denied as to all other grounds.

The motion of Gray to add the present count was allowed. It was treated by the examiner as a motion to substitute and accordingly the interference was subsequently reformed and redeclared.

The motion of Fife to shift the burden of proof on the basis of the disclosure in his application of September 5, 1936, naturally was denied by the examiner as to the original count, he having held the interference dissolvable as to that count, and since Fife's application of October 20, 1939, was filed subsequent to that of Gray there was no basis in it for Fife's motion.

It appears that during the consideration of the several motions made during the mo-

tion period and after the motion by Gray to add the count at issue had been made, it was contended by Gray (and Bright also) that Fife (we quote from the examiner's decision) " * * * cannot make this count either in the parent application because the count avoids addition of a substantial quantity of petrolatum according to the three component composition thereof, and contains the limitation to extract of a lubricating oil, or in either Fife application (including the presently involved application) because the extracts are the major constituent of the composition."

The examiner (who disposed of all the motions in a single opinion handed down April 21, 1941) held "The argument [of Gray and Bright] as to Fife's basis in the parent application [serial 99,640] appears to be proper," stating his reasons (hereinafter referred to) but said: "As to the present Fife application, it is considered that adequate basis is found therein to support this count. Fife discloses a two component composition and refers to lubricating oil extracts (page 4, line 13–20 of the presently involved Fife application)."

No motions to dissolve were made following the redeclaration of the interference on June 11, 1941.

The Board of Interference Examiners discussed all phases of the controversy with thoroughness. It held, in effect, in the first instance, that the examiner's ruling against Fife's motion to shift the burden of proof (which motion was renewed before the board) was without error because there was no adequate disclosure of the count in Fife's application, serial No. 99,640, filed September 5, 1936.

With respect to Fife's application, serial No. 36,365, filed August 15, 1935, upon which he also relied for constructive reduction to practice, the Board held that at most it could not be relied upon for anything more than conception, even if it disclosed the invention, because it had been abandoned before the filing of the present application and application serial No. 99,-640 did not disclose the invention. In a subsequent part of its decision, where the early application was considered in the analysis of Fife's proofs of invention, the Board held, stating its reasons, that it "is deemed not even to be evidence of conception."

It may be said just here that the application, serial No. 36,365, filed August 15, 1935, entitled "Coating Solid Fuel", appears to have been finally rejected by the examiner July 11, 1936, on prior art, and there was no further prosecution of it. It seemingly was pending under the rejection by the examiner when application, serial No. 99,640 (which made no reference to it), was filed September 5, 1936, but had become abandoned before the directly involved application, serial No. 300,343, was filed. It may also be said that application, serial No. 99,640, appears to have stood under final rejection by the examiner as of April 20, 1939, and that application, serial No. 300,-343, as stated by the Board, "was filed on the last day of the statutory period for response to this final rejection." Application, serial No. 99,640, was not further prosecuted and became abandoned after the filing of application, serial No. 300,343.

▉ Following the redeclaration of the interference, preliminary statements were filed by the respective parties and in due course testimony was taken on behalf of Fife (and Bright also). Gray took no testimony and is restricted to his filing date.

In his preliminary statement Fife made reference to a former preliminary statement evidently filed by him following the declaration of the original interference, reiterated the allegations therein made and added certain allegations thereto.

In the preliminary statement involved here reference was made to his applications, serial No. 36,365, filed August 15, 1935, and serial No. 99,640, seeking to connect them with the instant application and through them to establish continuity from at least August 15, 1935, to his filing date of October 20, 1939. (Reference was also made therein to another of his applications, but it does not appear to have been subsequently relied upon and need not be further referred to herein.)

Fife's reasons of appeal make various specific allegations of error on the part of the Board, which need not be recited in minute detail. The brief on his behalf states that it is necessary for the court to consider, in connection with the statement of the case and the errors assigned, his three applications above identified along with the specification of the application of Gray, and, in addition, certain publications which were made a part of the record in the case. It states "Limited reference to testimony will be made herein."

At another point in the brief, after stating the case, it is said: "It is clear from the above that the party Fife primarily rests his case on his disclosure of the invention in his 1936 application. That application being copending both with the application here in interference and with the Fife 1935 application, the recognition that it discloses the interference count ties in Fife's 1935 application as a link in Fife's assertion of his invention. It is unquestioned that if the Fife 1936 application be given the status of a disclosure as originally filed Fife has a constructive reduction to practice long before the filing date of Gray [Field v. Colman, 193 O.G. 221]. Also, if at any stage in its prosecution prior to the filing date of Gray (Gray being limited to his filing date), Fife's 1936 application became qualified as a complete disclosure of the count, that application constitutes at least proof of conception of the invention coupled with diligence by its prosecution to a date beyond the filing of Gray and including the filing of Fife's 1939 application."

We have heretofore stated the conclusions of the Board with respect to the application, serial No. 36,365, and we here quote that tribunal's declaration concerning it made in that portion of its decision which discussed it in connection with Fife's proofs:

"On August 15, 1935 Fife filed Serial No. 36,365. As pointed out previously, this application is of no benefit to the party Fife as a constructive reduction to practice, but it may be used as proof of conception. This application also contains the suggestion that the melting point and viscosity of the 'naphthenic oil' may be lowered 'by the addition to it of paraffin wax, crude petrolatum, and possibly some (alphatic) oil.' This vague hint of the possible addition of 'some' aliphatic oil is not considered to constitute a disclosure of 'a coal spray oil composition consisting substantially' of two designated ingredients of fixed relative importance and therefore is deemed not even to be evidence of conception."

It is our view that there was no error in the Board's holding in this regard, and, notwithstanding the references to that application in Fife's reasons of appeal and such arguments as are made in his brief concerning it, we find it unnecessary to discuss it further.

With respect to the testimony of Fife and the several witnesses called on his behalf, the brief makes (as was stated in the quotation above would be the case) only "limited reference," and during the oral argument before us counsel for appellant, in effect, conceded that it would not be necessary for us to analyze and consider it.

If Fife did, in fact, disclose the invention in his application, serial No. 99,640, filed September 5, 1936, it was error to deny his motion to shift the burden of proof to Gray and, upon the record as it stands (Gray having presented no proof), he should be awarded priority without reference to the testimony on his behalf.

So, determination of the controversy is dependent upon the disclosure of Fife's application, serial No. 99,640, filed September 5, 1936.

The holdings of the Board, which concurred on this matter with the views expressed by the examiner in his decision on Fife's motion to shift, were based upon the interpretation given certain limitations of the count, and the gravamen of Fife's contentions before us is that the count was improperly interpreted. In passing upon the issue it seems to be necessary to consider the meaning of the term "petrolatum," although that term is not present in the count.

Fife's brief comments upon the count as follows: "The interference count like all patent claims presents a certain artificiality in its wording and whereas we agree that one seeking support for a count in an asserted disclosure must be able to find in such disclosure clear response to the sense of the words used, we present that the sense of those words is open to construction in the light of the knowledge of the subject matter possessed by the art, and in the light of the context or total setting for the words. Particularly, if interpretation be necessary, the count must be construed in the light of the specification on which the count is based and by which, therefore, the sense of the words used in the count is primarily to be determined. As will appear, the count is here of such nature as inevitably to require interpretation, because of the sort of limitations which it contains."

It is not understood just what is meant by the term "artificiality" used in the above quotation. We discern nothing

cryptic or complicated in the phraseology of the count. It requires a composition consisting substantially of two ingredients, (1) "a heavy solvent extract of a petroleum lubricating oil" (defined as a major constituent); (2) "a relatively less viscous solvent petroleum oil" (defined as a minor constituent), the latter in a quantity sufficient to lower the viscosity of the blended elements after the major constituent is dissolved in the minor constituent.

As we understand it, the "heavy * * * extract" which constitutes the first, or major, constituent is obtained by the use of a solvent in lubricating oil which results in separating heavy fractions (the extract) from the body of the oil, and the second or minor constituent is a light petroleum oil probably obtained in much the same manner. It is possible that the light oil may be that which is left after the heavy elements are extracted, but, obviously, the count requires that the two named constituents be treated as separate entities. In other words, the "raw" material from which the respective elements are obtained may not be used, or at least the count does not contemplate its use before the heavy extracts have been separated from the oil. The quantity of the light oil used must be regulated to obtain the result defined in the count.

We think the foregoing interpretation of the count conforms with the interpretation of it made by the respective tribunals of the Patent Office, although we have used somewhat different phraseology.

The brief on behalf of Gray correctly states the issue which we are called upon to determine and fairly epitomizes the contentions on behalf of Fife as follows: "The principal question to be decided is whether or not the patent office tribunals erred in their *concurring findings* of fact with regard to the technical meaning of terms employed in the interference count and in the several applications considered and with regard to the actual teachings of the 1935 and 1936 Fife applications. Party Fife alleges error in the *concurring* findings that 'petrolatum' was the 'major constituent' of the compositions described in the 1935 and 1936 Fife applications. He alleges error in the *concurring findings* that 'petrolatum' is *not* 'a relatively less viscous solvent petroleum oil' than 'a heavy solvent extract of a petroleum lubricating oil.' Even though

his own 1935 application defined petrolatum as being a *'greasy solid'* at ordinary temperatures, he now alleges error in *concurring findings* that this greasy solid is not 'a relatively less viscous solvent petroleum oil'. He alleges error in the *concurring findings* that the term 'extract' in the 1936 application, this 'extract' having certain properties but coming from some undisclosed source, is not necessarily 'a heavy solvent extract of a petroleum lubricating oil'. Fife has shown no error in any of these findings by the tribunals of the Patent Office who are skilled in this art." (Italics quoted.)

The examiner (whose holding the board expressly approved) stated: "The extracts of Fife's parent application [serial 99,640] are not adequately indicated to be derived from *lubricating oil*. The coal spray composition of the parent application contains *substantial quantities of petrolatum*. The extracts are not the major constituent either according to the terms of the proposed [involved] count or the parent Fife disclosure." (Italics ours.)

The Board elaborated upon the finding of the examiner and we quote the following from its decision:

"* * * Consider[ing] the limitation 'major constituent' solely from the quantitative standpoint, it is quite evident that the disclosure in the earlier [Sept. 5, 1936] application is inconsistent therewith, for in no case can the quantity of extracts exceed the quantity of petrolatum and the proportion of extracts decreases from 50% as the ratio of extracts to petrolatum decreases from 1:1 and as low viscosity oil is added to the blend of extracts and petrolatum. Considering the phrase 'major constituent' qualitatively as well as quantitatively, meaning 'most important,' as was done by the primary examiner in his decision on motions, it appears that extracts are not taught to be the major constituent in the earlier application. The major constituent in that application appears to be petrolatum, which is merely *modified* by the addition of extracts *in any ratio* up to 1:1. Even if the party Fife's interpretation that petrolatum is an oil were accepted, the holding would not be changed that the 1936 Fife application does not teach the use of 'a heavy solvent extract of a petroleum lubricating oil' as the 'major constituent' of a coal spray oil composition.

"In addition, the 1936 Fife application does not disclose a composition 'consisting substantially' of the extract specified in the count and 'a relatively less viscous solvent petroleum oil.' It is to be noted that the lowest proportion of petrolatum in a coal spray composition which would be obtained by following the teachings of Serial No. 99,640 would be 25%. Such a high proportion of petrolatum certainly avoids the words 'consisting substantially' if petrolatum is not construed to be 'a relatively less viscous solvent petroleum oil.' The party Fife contends that at elevated spraying temperatures the petrolatum is liquid, less viscous than extract, is a solvent for the extract, and therefore corresponds to the limitation in the count, 'a relatively less viscous solvent petroleum oil.' However, the primary examiner held, in his decision on motions, that the terms of the present count exclude petrolatum and this holding is deemed to be correct. The party Fife points out that petrolatum has a substantial content of oil and that oil is also present in extracts, but such a state of facts would not alter the conclusion that the composition disclosed in Serial No. 99,640 is not a two-component blend of the type required by the interference count."

Fife does not challenge the finding of the Board that the lowest proportion of petrolatum in a coal spray composition which would be obtained by following the teachings of serial No. 99,640 would be 25%, or the board's conclusion to the effect that this would be a substantial amount. He, however, seeks a holding to the effect (as expressed in a part of his brief referring to the examiner's decision) that "petrolatum is in fact the solvent oil component in a composition of extracts and petrolatum," and the major portion of his argument before us is devoted to this contention.

Having in mind the fact that the count calls for a two-element composition, a major element and a minor element, it seems obvious that to sustain Fife's right to make the count (the question actually involved in his motion to shift the burden of proof) it would have to be held that petrolatum is itself (for we may not consider equivalents here) either a heavy solvent *extract* of a petroleum lubricating oil (the major constituent) or a relatively less viscous solvent petroleum oil (the minor constituent). A holding that petrolatum constitutes both elements, in our opinion, would not conform with the count, and we

do not understand that Fife contends otherwise. As we interpret the argument of his counsel, Fife must regard petrolatum as the major constituent, although some expressions in the brief might be construed as treating it as the minor constituent. If it be treated as the major constituent the question arises as to what showing he makes of a minor constituent, that is, "a relatively less viscous solvent petroleum oil." If, on the other hand, it be treated as the minor constituent, the question is presented as to what is shown as the major constituent, that is, "a heavy solvent extract of a petroleum lubricating oil."

It is our view that the petrolatum may not properly be held to constitute either constituent in the sense of the count.

All the standard authorities examined by us indicate that petrolatum is primarily regarded as a pharmaceutical product, derived from petroleum by a process of distillation.

Webster's New International Dictionary (1939 edition) gives a typical definition of the term as follows: "A neutral unctuous substance, without taste or odor, derived from petroleum by distilling off the lighter portions and purifying the residue. Several forms are recognized, namely: (1) A yellow to light-amber semisolid form known as *petrolatum, petroleum jelly,* or *soft paraffin.* (2) A decolorized variety of this form known as *white petrolatum* or white *petroleum jelly.* (3) A colorless or faintly yellow liquid form known as *liquid petrolatum, liquid paraffin, white mineral oil,* or *paraffin oil.* Several of the foregoing are also marketed under well-known trade-marks, as *Vaseline,* etc. The semisolid forms are used chiefly as bases for ointments or as vehicles for certain medicaments, while the liquid forms are used in the preparation of nasal sprays and as lubricants for the intestinal tract."

Fife devotes much of his brief to a discussion of one of the examples of a coal spray composition given in Gray's specification, in which "a wax distillate having a viscosity of 100 seconds Saybolt at 100°F" is named as a light lubricating oil. It would seem to be Fife's position that his petrolatum is the same thing as, or at least the equivalent of, Gray's wax distillate. As has been indicated, we are not at liberty to consider the matter of equivalents in this proceeding, and we do not understand petrolatum and wax distillate to be synonymous.

Both are derived from petroleum, of course, but they are products differing from each other in character.

It will be noted that the count does not mention either wax distillate or petrolatum, and Gray's disclosure is clearly sufficient to support the count irrespective of the reference to wax distillate made in the specification.

We do not think the Board misinterpreted the count in the light of the specification of either Fife or Gray. The examination of the subject matter embraced in the publications which Fife stated required our consideration discloses nothing which we regard as helpful in sustaining Fife's claim of priority.

Upon motion of Gray, the Board "suppressed" certain specified items of Fife's rebuttal testimony to the extent that it stated it would not consider it in passing upon the question of priority, and error was assigned as to this in one of Fife's reasons of appeal, but the matter was not pressed at the hearing before us, and in view of the concession that there is no necessity of our analyzing and considering any of the testimony we have assumed that reason to have been abandoned. We may say, however, that it appears to have been testimony which should have been taken in chief.

As has been indicated, every issue raised in the controversy was discussed quite thoroughly by the Board, and we find no reason to disagree with its conclusion.

The decision, therefore, is affirmed.

Affirmed.